THOMAS F. HARMON AND OTHERS, PLAINTIFFS IN ERROR, *vs.* BENJAMIN WALLACE, DEFENDANT IN ERROR.

In an action on a sealed note, dated 20th October, 1863, and payable, with interest, on 1st January, 1866, in "current funds," the consideration of which was land purchased by the maker from the payee, evidence of the real value of the land at the date of the purchase, and that by " current funds " the parties meant "Confederate money," was given, and the Judge instructed the jury that they could not resort to the Act "to determine the value of contracts made in Confederate States notes or their equivalent," in fixing the amount of the recovery, because it not only impaired, but actually annulled the contract made by the parties, and was in conflict with Article I, Sec. 21, of the State Constitution, prohibiting the enactment of any law impairing the obligation of contracts : *Held*, that there was error in the instruction, and for this a new trial was granted.

The Act may be used as evidence to determine the value, in lawful money, of contracts made with reference to Confederate States notes, as the medium of payment, and, in this view, it does not impair the obligation of contracts.

Evidence as to the value of the land, and other circumstances, to show that the parties looked to Confederate currency as the medium of payment, was competent, but it was error to instruct the jury to ascertain the value of the land at the date of the contract, in national currency, and find for the plaintiff a sum equal to such value, with interest.

The jury should have been instructed, as the Ordinance of 1865 provides, that having "regard to the particular circumstances" of the case, they should find such verdict as would effect substantial justice between the parties.— *Semble.*

Willard, A. J., concurred in the result, but *held* that the jury should have been instructed to find the value in lawful money, at the date of the contract, of the amount in Confederate currency which the parties had agreed should be paid, with interest.

BEFORE ORR, J., AT NEWBERRY, OCTOBER EXTRA TERM, 1868.

The case came up by writ of error, the defendants below being plaintiffs here, and it was heard by this Court upon a report of His Honor the presiding Judge, which is as follows: "This was an action against the defendants on a sealed note for $6,000, payable " in current funds " the 1st January, 1866, with interest from the 1st day of January, 1864, interest payable annually, and dated 20th October, 1863. The plaintiff sold and conveyed to the defendant a tract of land, containing 595 acres, for $18,000, to be paid in three equal installments. The first installment was paid when defendant entered into possession; the second in August, 1864. Both payments were made and accepted in Confederate money, and the note sued on was for the third and last installment. Plaintiff and defendant offered evidence of the real value of the land at the date of the purchase. The witnesses for plaintiff estimated the land as worth, in " good money," at from 15 to 20 dollars per acre, and defendant's witnesses at from 6 to 15 dollars per acre. Contiguous lands had been sold before and since the war at from 4 to 27 dollars per acre. The defendant and one other witness testified that " current funds " used in the note was intended to fix " Confederate money " as the medium of payment. The foregoing evidence of the value of the land and the currency in which payment was to be made was admitted under the Ordinance of the Convention of 1865. The jury were instructed to ascertain the value of the land in good money (national currency) at the date of the purchase, that two-thirds of that value had been paid by defendant and accepted by plaintiff, and that they should find the remaining third thus ascertained, with interest thereon, computed annually from the first of January, 1864, to the date of the verdict.

" The jury were further instructed that they could not resort to the Act of the Assembly " to determine the value of contracts made in Confederate States notes or their equivalent," approved 26th March, 1869, in fixing the amount of the recovery on this contract; that it not only impaired, but actually annulled the contract made by the parties, and was in conflict with Article I, Section 21, of the State Constitution, which prohibits the enactment of any law " impairing the obligation of contracts."

" The jury found a verdict for the plaintiff for four thousand two hundred dollars and thirteen cents."

The error assigned was as follows:

That your Honor erred in charging the jury that the Act of the General Assembly, No. 187, entitled "An Act to determine the value of contracts in Confederate States notes or their equivalent," approved March 26th, 1869, could not be resorted to, to fix the amount of the recovery of the note sued on, as it not only impaired but annulled the contract made by the parties, in contravention of the Constitution of this State, Article I, Section 21, which declares that no law impairing the obligation of contracts shall ever be enacted; and also the clause of the Constitution of the United States, prohibiting the States from passing any law impairing the obligation of contracts.

*Baxter, Fair,* for plaintiffs in error.

*Jones, Sullivan,* contra.

Nov. 28, 1870. The opinion of the Court was delivered by

MOSES, C. J. We have, at this Term, held, that the Act of March 26th, 1869, entitled "An Act to determine the value of contracts made in Confederate States notes or their equivalent," is not in violation of the twenty-first Article of the State Constitution.— *Neely* vs. *McFadden,* (ante, p. 169.)

While agreeing with the plaintiffs in error that the presiding Judge did not submit to the jury the proper instructions by which their verdict was to be regulated and determined, we cannot concur in the proposition on which his counsel insists, that, in regard to the note in suit, all which it was competent for the Court to do was to direct the jury to apply the standard of value, as adopted by the parties, when ascertained, to the terms of the contract. If, therefore, the proof disclosed that Confederate notes was the intended basis, then nothing was to be left to the jury but to convert the nominal amount called for into lawful money.

The contract is to be construed according to the intent and meaning of the parties, through such testimony as may be competent and adequate to that end. Owing to the peculiar condition of the State during the war, and the anomalous character of the only currency which circulated as the medium of exchange, it has been held by the Supreme Court of the United States that it was competent to show, by evidence, that "a contract, payable in the States engaged in and during the rebellion, in dollars, was, in fact, made for the payment in Confederate dollars."—*Thorington* vs. *Smith,* 8 Wallace, 1.

An adherence to technical rules, so essential to the attainment of justice through the administration of law, would fail to accomplish the important result in view, if, under no circumstances, a deviation from the stern requisition would be permitted.

The case before us furnishes an apt illustration of the necessity of sometimes looking beyond the mere force of the language employed to discover what was the purpose and object of the parties through the words which they employed to indicate their understanding and agreement.

What did they propose in the use of the words " current funds " as the medium of payment? Did they intend to refer to Confederate notes, current at the time of the contract, or to the circulation which might prevail as the installments respectively fell due, or was their contract based upon a mutual expectation, then expressed, that when the day for the payment of the first, second or last proportion of the debt arrived, the establishment of the Confederacy as an independent Government would impart to the Treasury notes a value equal to gold ? Testimony, therefore, was properly admitted to shew that both the vendor and purchaser, in the estimate of the value of the land, looked to a particular currency as the medium of payment.

The exceptional condition of things which existed in South Carolina, during the war, was recognized by the Convention which met in September, 1865, after its close.

While it was waged, contracts had been entered into, the performance of which depended apparently upon the payment of the specified amounts, in a currency which, so far from being that generally used in circulation, was, at the time, scarcely known in the State. The Confederate Treasury notes had substituted every other medium of exchange. The true intention of parties could alone be ascertained by enlarging the rules of evidence, and this necessity was responded to by the Ordinance of 27th September, 1865.

This permitted the introduction of testimony to show, in all contracts made between January 1, 1862, and May 15, 1865, "the true value and character of the consideration at the time they were made." This extension of the rule of evidence would have been illusory if the Ordinance had not applied it to a practical end. It, therefore, enjoined that, under the additional proof allowed, "regard being had to the particular circumstances of each case, such verdict or decree might be rendered as will effect substantial justice between the parties."

In *Rutland* vs. *Copes, et al.*, 15 Rich., 84, the Court, which then in South Carolina possessed the highest appellate jurisdiction, held "that the Ordinance did not impair the obligation of contracts, and, therefore, was not in conflict with the provision of the Constitution of the United States that no State shall pass any law impairing the obligation of contracts."

It has been recognized by this Court as of subsisting force in the case of *Bobo* vs. *Goss*, decided at November Term, 1869.

It was, therefore, competent for the parties, in the cause before us, to shew the value of the land at the time of sale, as contributing to develop the "real character of the consideration." It was an important element "in the particular circumstances" of the case, all of which might be presented to the jury, whose verdict was "to effect substantial justice between them."

Both the plaintiff and defendant did introduce evidence "as to the value of the land and the currency in which the payment was to be made;" and we hold that the presiding Judge was right in admitting it.

In our view, the error on his part consisted in undertaking to direct a conclusion for the jury, to be based upon the proof as to the value of the land at the date of the transaction, instead of leaving it to them, under the Ordinance, by virtue of which, as it appears by the brief, certain testimony was allowed to be offered, looking to the "particular circumstances" in evidence, to find such a verdict as would "effect substantial justice." It is on a solution of these that the verdict is to be rendered, and that solution is to be by the jury, and not the Court.

It may be objected that a large opportunity is thus allowed for the caprice of a jury, and one that will often operate unjustly and unfairly if the verdict is to be regulated by their sense of substantial justice, to be deduced from a consideration of the "particular circumstances of each case." That is an argument which, even if well founded, cannot influence us. We do not make the law; our duty is but to expound and declare it. The remedy for a perversion of right and justice, on the part of the jury, will find a corrective in the power of the Judge to grant a new trial.

Prices during the war were not always regulated by the standard of the value of the prevailing currency as compared with specie. The paper circulated as money by the National Government was scarcely known in the Confederate States. In many

instances, the scarcity of the article required gave it an inflated value, even when compared with the Treasury notes of the said States. To have enforced contracts entered into within the period fixed by the Ordinance according to their literal import, when the termination of the war left the State in an exhausted condition, and its people with scarcely the ability of daily support, would have led to results involving utter ruin. It was, as must be supposed, the contemplation of this situation which induced the interposition of the Ordinance.

Our view of the case in no way conflicts with the decision of the Supreme Court in *Thorington* vs. *Smith*, 8 Wallace, 1.

The Chief Justice, speaking for the Court, through his opinion, after holding that the contract, before it could be enforced in the Courts of the United States, addresses himself to the admission of testimony " to prove that a promise expressed to be for the payment of dollars, was in fact made for the payment of any other than lawful dollars of the United States," and says: " We are clearly of opinion that such evidence must be received in respect to such contracts, in order that justice may be done between the parties, and that the party entitled to be paid in these Confederate dollars can recover their actual value at the time and place of the contract in lawful money of the United States."

The fact that " dollars," expressed in the note, was intended to refer to "Confederate dollars," was established by the evidence allowed to be introduced on that point. No other question was before the Court, except as to its right to enforce any contract for the payment of Confederate money.

There was no offer to prove that the mode by which the " true value and real character of the consideration of such contract " were to be ascertained had been fixed by the highest power of legislation in the State where the contract originated. If the Court, in *Thorington* vs. *Smith*, " in order," as it says, " that justice may be done between the parties," had the right to open the agreement for enquiry as to its true character, and to fix its value, it will not be contended that the State of South Carolina had not the right to confer upon its own Courts the exercise of the same power as to the admission of evidence, and to direct the mode by which they should establish the value of such contracts. The Ordinance does no more.

The verdict is set aside, and a new trial ordered.

*Wright*, A. J., concurred.

WILLARD, A. J.   Plaintiff below sued on a promissory note, bearing date October 20th, 1863, for $6,000, payable January 1st, 1866, with interest from January 1st, 1864, given for the purchase of land.   The price of the land was $18,000, payable in three equal installments, one of which was paid in 1863, the second in 1864, both in Confederate money, and the last was represented by this note in suit.

On the trial, parol evidence was admitted to show what the parties meant by the terms " current funds."  As no objection appears to have been made to this testimony, it is not before us for our consideration.   Proof of the value of the land was admitted.   There appears to have been two instructions given by the Circuit Judge to the jury : first, that they were to ascertain the value of the land in good money, (national currency,) at the date of the purchase; that two-thirds of that value had been paid by defendant and accepted by plaintiff, and that they should find the remaining third, thus ascertained, with interest thereon, computed annually, from the first of January, 1864, to the date of the verdict; and, second, that they could not resort to the Act of Assembly to determine the value of contracts made in Confederate States notes or their equivalent, approved 24th March, 1869, in fixing the amount of the recovery on the contract; that it not only impaired but actually annulled the contract made by the parties, and was in conflict with Art. I, Sec. 21, of the State Constitution, which prohibits the enactment of any law impairing the obligation of contracts.

The defendant's counsel appears to have excepted to the second proposition charged as above stated, but no exception appears to the first proposition charged.   The first proposition was laid down by the Circuit Judge as the rule of damages for the case, and we must assume that the verdict was constructed by that rule.   The second proposition was negative in form, and, in effect, excluded from the jury the rule on which the defendant relied.   Technical accuracy would require that the defendant's counsel should have excepted at the trial, and before the jury left their seats, not only to the refusal of the Judge to submit the proposition contended for by the defendant, but, also, to the rule laid down as contended for by the plaintiff.   But as the proposition, brought here by the defendant's exception, in itself, distinctly negates that which controlled the verdict, we are at liberty to regard the defendant as having substantially complied with the rule as to the exceptions.

The proposition involved in the second ground of charge has

already been considered and decided by this Court in favor of the plaintiff in error in the case of *Neely* vs. *McFadden*, and, following that decision, the verdict should be set aside.

The instruction requiring the jury to render a verdict for one-third of the value of the land, when ascertained, not only thrust aside the actual contract of the parties, but sought to bind them with the terms of a new contract, made through the intervention of a Court and jury. In this respect, the original contract is treated as if it had been agreed that the defendant should pay for the land what it was reasonably worth, leaving a question of value for the jury to determine. The parties, however, when they made the contract, supposed that they themselves had fixed the value of the land, and had no thought of submitting that question to a jury. They agreed upon a price, and fixed the time of payment. All that the Court has to do is to ascertain the mind of the parties as to the amount to be paid at the time of making the contract, and this is accomplished by applying the standard of value adopted by themselves to the terms of their contract.

If this standard was the current value of Confederate currency, then it is only necessary to convert the nominal amount of that currency called for into its actual value in lawful money, and render a verdict for the result. In accomplishing this, as we have already held, resort may be had to the Act of March 26th, 1869 ; although the parties may, if they choose, go into proof of the relative value of Confederate currency and lawful money of the United States.

The submission to the jury of the question of the value of the land under such instruction involved the erroneous assumption that the price fixed by the parties was intended to be based upon the market value of the land at the time of sale. Although, within certain limits, that market value probably influenced the result at which they arrived, yet it must be assumed that their minds met as to the price on the basis of what the land was worth, or supposed to be worth, to the parties themselves, under all the circumstances by which they were affected. To interpolate into their contract the market value of the land, in the place of the price named by themselves, is to refer their contract to a standard of value that may never have been assented to by one side or the other.

If the purchase happened to be a very favorable one to either of the parties, its effect is to deprive such party of the advantage which he may rightfully claim.

I concur with the majority of the Court in the conclusion to which they arrive, namely, that the verdict should be set aside; but cannot assent to the proposition that any other standard for determining the amount of the judgment can be applied than that which existed in the minds of the parties at the time of making the contract, as evidenced by the contract and the attending circumstances.